# EXHIBIT A

**BEFORE THE PROSPERA ARBITRATION CENTER**

**(Trial Arbitral Tribunal – Precedential Proceedings – Minor Claims)**

| | |
|---|---|
| MASI LLC,<br>*Plaintiff Claimant,*<br>*v.*<br>*SESHAT BANK, SEAN PAWLEY,*<br>*Defendants Respondents.* | No. COMM-MIN-2025-1<br><br>JUDGMENT |

The Arbitrator has reviewed the following documents filed by the Plaintiff Claimant: Affidavit Amounts Due, Request for Entry of Default, and various Exhibits. The Arbitrator notes that Service was made on Defendants Respondents, and that Default was entered. The Arbitrator determines that Entry of Judgment is appropriate and should proceed.

Accordingly,

IT IS ORDERED, ADJUDGED AND DECREED that Plaintiff Claimant have judgment against defendants and each of them for the following sums: $40,943.35 in principal deposits, PAC fees and costs, attorney fees in the amount of $5001.74 and accruing fees and costs in an amount to be proven in the future, treble damages in the amount of $122,830.05, for a total amount accrued to date of $173,831.79, and accruing interest and accrued interest not included heretofore,

at the rate of 10%.

DATED this 19th day of March, 2025.

James Kenneth Mangum
Arbitrator

# EXHIBIT B

# Próspera ZEDE

# Arbitration Statute 2019

**Background**

A. The Constitution of the Republic of Honduras Article 329 states:

*"The authorities of the zones subject to special regimes have the obligation of adopting the best national and international practices to guarantee the existence and permanence of the social, economic, and legal environment adequate in order to be competitive at the international level*",

and

*"The law may establish obligatory subjection to arbitration for the solution of conflicts of natural or juridical persons that live within the areas included in those regimes for certain matters."*

B. The respective ZEDE Organic Law stipulates:

*" Zones of Economic Development and Employment (ZEDE) should make use of binding arbitration for all matters involving contracts or property... "*

and

*"Arbitration awards shall be equivalent to judgments of national or international courts... "*

**Part 1 - Preliminary**

**1 Title**

This instrument may be cited as the **Arbitration Statute 2019** and is referred to as "this Statute."

**2 Effective Date**

This Statute shall be deemed to be effective the earlier of (1) sixty (60) days after initial presentment to CAMP by email transmission (if the same is not timely disapproved by CAMP) or (2) the date it is approved by CAMP (following adoption by the Próspera ZEDE pursuant to section 3.09(8)(a) of Próspera ZEDE Charter).

**3 Short Description and basis of authority**

This Statute provides for best practice mandatory arbitration for certain disputes; it is an "internal regulation" of the Próspera ZEDE under articles 8(5), 12(5), 12(6), 12(7), 12(10) and 12(11) of the Organic Law and a "statute" under section 3.09(8)(a) of the Próspera ZEDE Charter.

**4 Purpose and object**

(1) The purpose of this Statute is to provide for arbitration of disputes to which this Statute applies.

(2) Having regard to the provisions of the Constitution of the Republic of Honduras set out in background A, the paramount object of this Statute is to facilitate the fair and final resolution of disputes to which this Statute applies by impartial arbitral tribunals without unnecessary delay or expense and in accordance with best national and international practices.

(3) This Statute aims to achieve its paramount object by:

(a) enabling parties to agree about how their disputes to which this Statute applies are to be resolved exclusively by arbitration; and

(b) providing arbitration procedures that enable disputes to which this Statute applies to be resolved in a cost-effective manner, informally and quickly.

(4) This Statute must be interpreted, and the functions of an arbitral tribunal must be exercised, so that (as far as practicable) the paramount object of this Statute is achieved.

(5) This Statute furnishes default rules for contractual arbitration; it is not intended to override any contract that provides express provisions to the contrary to govern the parties to a dispute.

**5 Interpretation**

(1) In this Statute, unless the context otherwise requires:

**arbitration agreement** includes:

(a) a written agreement to submit to arbitration all or certain disputes which have arisen or which may arise between parties in respect of a defined legal relationship, whether contractual or not;

(b) without limiting subarticle (a), a provision of a residency contract of the Próspera ZEDE that provides for the resolution of disputes by arbitration; and

(c) an agreement that results from acceptance by a person of a standing offer under subarticle 6(2).

**arbitral appeals tribunal** means the sole arbitrator or panel of arbitrators who shall furnish appellate review of public adjudicative proceedings before the arbitral tribunal, which had original jurisdiction, of the default arbitration services provider.

**arbitral award** or **award** means the resolution or determination by an arbitrator of a claim, cause of action, difference or matter referred to arbitration under this Statute.

**arbitration services provider** or **ASP** means the person appointed from time to time to perform the role of the arbitration services provider under this Statute in respect of a dispute, being:

(a) if the parties to the dispute in writing agree or have agreed the identity of the person who is to be the ASP, that person;

(b) otherwise, the default arbitration services provider.

**arbitral tribunal** means a sole arbitrator or a panel of arbitrators.

**CAMP** means the Committee for the Adoption of Best Practices that is established under the Organic Law, and any body that continues or substantially replaces it.

**Charter and Bylaws** means the Amended and Restated Charter and Bylaws of the Próspera ZEDE, as amended from time to time.

**claimant** means a person making, or proposing to make, a claim in an arbitral proceeding or a person acting on behalf of such a person, and includes a person making or proposing to make a cross-claim.

**confidential information,** in relation to non-public arbitral proceedings, means information that relates to the arbitral proceedings or to an award or order made in those proceedings and includes:

(a) the statement of claim, statement of defence and other pleadings, submissions, statements or other information supplied to the arbitral tribunal by a party;

(b) information supplied by a party to another party in compliance with an order of the arbitral tribunal;

(c) evidence (whether documentary or otherwise) supplied to the arbitral tribunal;

(d) notes made by the arbitral tribunal of oral evidence or submissions given before the arbitral tribunal;

(e) a transcript of oral evidence or submissions given before the arbitral tribunal;

(f) orders made by the arbitral tribunal;

(g) an award of the arbitral tribunal.

**Council** means the Council of Próspera that is established under the Charter and Bylaws.

**default arbitration services provider** means the Arbitration Service Provider of the Próspera ZEDE.

**disclose,** in relation to confidential information, includes publishing, communicating or otherwise supplying the confidential information.

**dispute** means any dispute or difference between two or more persons, and including:

(a) a matter to be determined by arbitration under article 28, second paragraph of the Organic Law; and

(b) disputes and differences arising under and in connection with the Charter and Bylaws which, in accordance with section 11.03 of the Charter and Bylaws shall be determined by arbitration under this Statute,

but excluding a dispute or difference to the extent that it concerns:

(c) claims and causes of action expressly excluded from arbitration by the Organic Law

**exercise** a function includes exercise an authority and perform a duty.

**function** includes a power, authority or duty.

**law** means:

(a) the Organic Law;

(b) the Roatan Common Law Code;

(c) the Charter and Bylaws;

(d) laws and legally binding instruments of the Republic of Honduras that bind the Próspera ZEDE or persons in the area of the Próspera ZEDE by force of Article 329, seventh paragraph of the Constitution of the Republic of Honduras; and

(e) statutes, regulations, ordinances and resolutions, including where the context permits this Statute.

**New York Convention** means the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (New York, June 10, 1958), which the Republic of Honduras joined on August 21, 2012.

**New York Convention court** a court of any foreign country, which is both a member of the Organization for Economic Co-operation and Development and also a party to the New York Convention.

**order** includes a direction.

**Organic Law** means Decree No. 120-2013 of the National Congress of Honduras and any replacement or modification.

**person** means natural persons and legal persons.

**residency contract** means the Agreement of Coexistence between a person and the Próspera ZEDE contemplated in the Próspera ZEDE Charter and Bylaws.

**respondent** means a person responding, or proposing to respond, to a claim in an arbitral proceeding or a person acting on behalf of such a person, and includes a person responding or proposing to respond to a cross-claim.

**Roatan Common Law Code** or **RCLC** means the Roatan Common Law Code made on 14 December 2018, §§ 2-3-4-0-1-0-1001 thru 2-3-4-0-5-0-5004, and any replacement or modification, and **RCLC §[*number*]** refers to the corresponding article number or section number of the RCLC.

**rules** means the arbitration rules published by the ASP for the conduct of arbitrations, to the extent that those rules are consistent with this Statute and with other applicable laws.

**Próspera ZEDE law** means the Organic Law, the Charter and Bylaws, and all statutes, regulations, ordinances and resolutions promulgated pursuant thereto by Próspera.

**Próspera ZEDE** means the Employment and Economic Development Zone (ZEDE) known as the Próspera ZEDE created under Articles 294, 303, and 329 of the Constitution of the Republic of Honduras, the Organic Law and the Charter and Bylaws.

**Próspera ZEDE court** means a court of the Próspera ZEDE, including such courts as are involved in the appellate hierarchy from the court of original jurisdiction, and expressly excludes any other court of the Republic of Honduras.

**Próspera ZEDE parties** means the Próspera ZEDE, the Próspera Council, the Próspera ZEDE's technical secretary, the general service provider, the Próspera ZEDE Trust, and all of their officers, agents, representatives and instrumentalities acting in an official capacity.

(2) In this Statute, references to statutes, ordinances, regulations and resolutions are references to statutes, ordinances, regulations and resolutions made under the Charter and Bylaws.

(3) Where a provision of this Statute, except article 47, leaves the parties free to determine a certain issue, such freedom includes the right of the parties to authorise a third party, including an institution, to make that determination.

(4) Where a provision of this Statute refers to the fact that the parties have agreed or may agree or in any other way refers to an agreement of the parties, such agreement includes any arbitration rules referred to in that agreement.

(5) Where a provision of this Statute, other than articles 37(1)(a) and 52(2)(a) refers to a claim, it also applies to a counterclaim, and where it refers to a defence, it also applies to a defence to such counterclaim.

(6) In this Statute, an arbitration agreement is in **writing** if its content is recorded in:

(a) any form, whether or not the arbitration agreement was concluded orally, by conduct or by other means;

(b) electronic communication if the information contained in it is accessible so as to be useable for subsequent reference, where **electronic communication** means any communication that the parties make by means of information generated, sent, received or stored by electronic, magnetic, optical or similar means, including electronic data interchange or electronic mail;

(c) exchange of statements of claim and defence in an arbitral or court proceeding in which the existence of an agreement is alleged by one party and not denied by the other;

(d) any document containing an arbitration clause to which reference is made in an agreement between the parties to the dispute, provided that the reference is such as to make that clause part of the agreement.

(7) This Statute shall be interpreted so as to be consistent with the provisions of the Constitution of the Republic of Honduras set out in background A and to achieve the purpose and paramount object of this Statute described in article 4.

**6 Application of this Statute**

(1) This Statute applies to and governs the resolution of a dispute to the extent that either:

(a) all of the parties to the dispute have contracted or otherwise agreed to resolve the dispute in accordance with this Statute; or

(b) the dispute is capable of arbitration under the Organic Law, Charter and Bylaws, or residency contract and:

(i) is based on a transaction or operative facts arising in substantial part within the boundaries of the Próspera ZEDE, or arises from the exercise of rights, privileges or immunities established or enforceable under the Organic Law, the Charter and Bylaws or a residency contract such that all parties to the dispute would have had sufficient contact with the Próspera ZEDE's jurisdiction and authority that they had or would have had reasonable notice of the dispute being governed by this Statute,

(ii) at least one of the parties to the dispute seeks arbitration of the dispute under this Statute, and

(iii) the parties to the dispute did not previously expressly or by necessary implication reject application of this Statute in a contract between them.

(2) By and subject to this Statute, the Próspera ZEDE and the Próspera ZEDE parties shall be deemed to hereby make a standing offer to all persons to resolve all disputes, to which this Statute applies, by arbitration under this Statute. This subarticle may be displaced by contract between a Próspera ZEDE party and any other person.

(3) This Statute does not affect any other law by virtue of which certain disputes may not be submitted to arbitration or may be submitted to arbitration only according to provisions other than those of this Statute.

(4) A party who knows that any applicable provision of this Statute or any requirement under the arbitration agreement has not been complied with and proceeds with the arbitration without stating the party's objection to such noncompliance without undue delay or, if a time-limit is provided for stating the party's objection, within such period of time, is taken to have waived the party's right to object.

(5) This Statute applies to an arbitration agreement whether made before or after the commencement of this Statute and to an arbitration under such an agreement.

**7 Application of other law**

(1) The Conciliation and Arbitration Law of the National Congress of the Republic of Honduras, approved by Legislative Decree No.161-2000 and published in the Official Gazette on February 14, 2001, shall have no applicability to any dispute or award governed by this Statute except: (a) as required to implement the New York Convention; or (b) as absolutely necessary to finally resolve the dispute or enforce the award.

(2) This Statute shall control and supersede, to the extent of any inconsistency, any rule with an earlier effective date as well as any rule with the same effective date which was adopted earlier by the Próspera ZEDE (and which is of equivalent or subordinate status in the hierarchy of rules under section 3.09 of the Charter and Bylaws).

**8 Default ASP**

The default arbitration service provider must:

(a) provide registry services for arbitration proceedings brought under the authority of this Statute, including to enable parties to the arbitration to file claims, defences and other materials;

(c) provide such communication and notification services as are required for the arbitration, and

(a) otherwise administer and furnish arbitrators for each arbitration for which it furnishes the arbitral tribunal in accordance with its arbitration rules, such other rules as the parties to the arbitration agree, or otherwise if no other ASP is identified by the parties in their arbitration agreement prior to the filing of any related claim for arbitration.

on payment of its published fees for such services.

**9 Role of the courts**

(1) A Próspera ZEDE court, before which an action is brought in respect of a dispute to which this Statute applies, may not exercise jurisdiction over the dispute except as expressly permitted by this Statute, and must refer the dispute to arbitration under this Statute if any party requests referral of the dispute to arbitration under this Statute not later than when submitting the party's first statement on the substance of the dispute.

(2) Where the action referred to in subarticle (1) relates to more than one dispute, any of which are not disputes to which this Statute applies, then subarticle (1) applies only in respect of the dispute or disputes to which this Statute applies.

(3) In matters governed by this Statute, no court may intervene except where so provided by this Statute and a court does not have jurisdiction in a dispute in respect of which this Statute applies, whether at first instance or in an appellate capacity, except to the extent all of the parties to the dispute agree in writing.

(4) Except as absolutely necessary to enforce an arbitration award issued pursuant to this Statute, the courts of the Republic of Honduras, other than the Próspera ZEDE court, do not have jurisdiction to, and must not, receive, hear, determine or make any order or decision in respect of any claim, appeal or other matter:

(a) which concerns a dispute to which this Statute applies; or

(b) which arises or may arise in respect of an arbitration that may be or has been commenced under this Statute,

and the Próspera ZEDE courts, the Próspera ZEDE parties, the ASP, the arbitrators and the parties to an arbitration that may be or has been commenced under this Statute shall be shielded from being bound by any such extra-jurisdictional order or decision by intergovernmental immunity to the greatest extent permitted by the Charter and Bylaws.

(5) A party to any dispute governed by this Statute is hereby authorized to petition any New York Convention court of competent jurisdiction for any relief, remedy or decision which would otherwise be assigned to the Próspera ZEDE court or the courts of the Republic of Honduras if and to the extent that (a) the Próspera ZEDE court has not been established, (b) the Próspera ZEDE court or courts of the Republic of Honduras respectively lack jurisdiction over the dispute or is otherwise incapable for furnishing the necessary relief or remedy, or (c) the party reasonably believes the Próspera ZEDE court or courts of the Republic of Honduras respectively will not furnish the relief or remedy contemplated by any part of this Statute in a sufficiently impartial, efficient or expeditious manner.

**Part 2 – The arbitral tribunal**

**10 Number of arbitrators**

The parties are free to determine the number and qualifications of arbitrators by contract. Failing such determination, the number of arbitrators is to be one and the arbitration tribunal must have legal education and practicing experience as a lawyer or judge.

**11 Appointment of arbitrators**

(1) No person is precluded by nationality from acting as an arbitrator unless otherwise agreed by the parties.

(2) The parties are free to agree on a procedure of appointing the arbitrator or arbitrators by contract. Failing such agreement:

(a) in an arbitration with a sole arbitrator, if the parties are unable to agree on the arbitrator, an arbitrator is to be appointed, on the request of a party, by the ASP or (if the ASP or any of the Próspera ZEDE parties is a party to the dispute, and the other parties have not knowingly and voluntarily waived any objection thereto) by order of the Próspera ZEDE court upon petition of any party;

(b) in an arbitration with 3 arbitrators, the initiating claimant, or allied claimants as a class, are to appoint one arbitrator, the respondent, or allied respondents as a class, are to appoint one arbitrator, and the 2 arbitrators so appointed are to appoint the third arbitrator (who will be the presiding arbitrator), and if a party fails to appoint the arbitrator within 30 days of receipt of a request to do so from the other party, or if the 2 arbitrators fail to agree on the third arbitrator within 30 days of their appointment, the appointment is to be made, on the request of a party, by the ASP or (if the ASP or any of the Próspera ZEDE parties is a party to the dispute, and the other parties have not knowingly and voluntarily waived any objection thereto) by order of the Próspera ZEDE court upon petition of any party (and the person so appointed will be the presiding arbitrator);

(c) otherwise the appointment is to be made, at the request of a party, by the ASP or (if the ASP or any of the Próspera ZEDE parties is a party to the dispute, and the other parties have not knowingly and voluntarily waived any objection thereto) by order of the Próspera ZEDE court upon petition of any party (and the person so appointed will be the presiding arbitrator).

**12 Grounds for challenge**

(1) When a person is approached in connection with the person's possible appointment as an arbitrator, the person must disclose any circumstances likely to give rise to justifiable doubts as to the person's impartiality or independence. There are justifiable doubts as to the impartiality or independence of a person approached in connection with a possible appointment as arbitrator only if there is a real danger of bias on the part of the person in conducting the arbitration.

(2) An arbitrator, from the time of the arbitrator's appointment and throughout the arbitral proceedings, must without delay disclose any circumstances of the kind referred to in subarticle (1) to the parties unless they have already been informed of them by the arbitrator.

(3) An arbitrator may be challenged only if circumstances exist that give rise to justifiable doubts as to the arbitrator's impartiality or independence, or if the arbitrator does not

possess qualifications agreed to by the parties. There are justifiable doubts as to the impartiality or independence of an arbitrator only if there is a real danger of bias on the part of the arbitrator in conducting the arbitration.

(4) A party may challenge an arbitrator appointed by the party, or in whose appointment the party has participated, only for reasons of which the party becomes aware after the appointment has been made.

**13 Challenge procedure**

(1) The parties are free to agree on a procedure for challenging an arbitrator.

(2) Failing such agreement, a party who intends to challenge an arbitrator must, within 15 days after becoming aware of the constitution of the arbitral tribunal or after becoming aware of any circumstance referred to in subarticle 12(3) send a written statement of the reasons for the challenge to the arbitral tribunal.

(3) Unless the challenged arbitrator withdraws from office or the other party agrees to the challenge, the arbitral tribunal must decide on the challenge and the arbitral tribunal's decision will be final and binding on the parties may be reviewed by the Próspera ZEDE court upon petition filed within 7 days of the decision, with the Próspera ZEDE court empowered thereby to direct the appointment of an impartial, competent substitute arbitrator.

**14 Failure or impossibility to act**

(1) If an arbitrator becomes in law or in fact unable to perform the arbitrator's functions or for other reasons fails to act without undue delay, the arbitrator's mandate terminates if the arbitrator withdraws from office or if the parties agree on the termination.

(2) If an arbitrator withdraws from office or a party agrees to the termination of the mandate of an arbitrator, this does not imply acceptance of the validity of any ground on the basis of which the withdrawal or termination was stated to occur.

**15 Appointment of substitute arbitrator**

Where the mandate of an arbitrator terminates for any legally justified reason, a substitute arbitrator must be appointed according to the rules that were applicable to the appointment of the arbitrator being replaced.

**Part 3 – Jurisdiction of arbitral tribunal**

**Division 1 – Arbitral tribunal's competence**

**16 Competence of arbitral tribunal to rule on its jurisdiction**

(1) The arbitral tribunal may rule on its own jurisdiction, including any objections with respect to the existence or validity of an arbitration agreement.

(2) For that purpose, an arbitration clause which forms part of a contract is to be treated as an agreement independent of the other terms of the contract.

(3) A decision by the arbitral tribunal that the contract in which the arbitration clause is found is null and void does not of itself entail the invalidity of the arbitration clause.

(4) A plea that the arbitral tribunal does not have jurisdiction must be raised not later than the submission of the statement of defence.

(5) A party is not precluded from raising such a plea by the fact that the party has appointed, or participated in the appointment of, an arbitrator.

(6) A plea that the arbitral tribunal is exceeding the scope of its authority must be raised as soon as the matter alleged to be beyond the scope of its authority is raised during the arbitral proceedings.

(7) The arbitral tribunal may, in the case of a plea referred to in subarticle (4) or (6), admit a later plea if it considers the delay justified.

(8) The arbitral tribunal may rule on a plea referred to in subarticle (4) or (6) either as a preliminary question or in an award on the merits.

(9) If the arbitral tribunal rules as a preliminary question that it has jurisdiction, any party may request, within 30 days after having received notice of that ruling, the arbitral appeals tribunal to decide the matter. A decision of the arbitral appeals tribunal that is within the limits of its authority is final. While a request under this subarticle is pending, the arbitral tribunal may continue the arbitral proceedings and make an award.

**Division 2 – Interim measures**

**17 Power of arbitral tribunal to order interim measures**

(1) Unless otherwise agreed by the parties, the arbitral tribunal may, at the request of a party, grant interim measures.

(2) An interim measure is any temporary measure, whether in the form of an award or in another form, by which, at any time prior to the issuance of the award by which the dispute is finally decided, the arbitral tribunal orders a party or any of the Próspera ZEDE parties to:

(a) maintain or restore the status quo pending determination of the dispute;

(b) take action that would prevent, or refrain from taking action that is likely to cause, current or imminent harm or prejudice to the arbitral process itself;

(c) provide a means of preserving assets out of which a subsequent award may be satisfied; or

(d) preserve evidence that may be relevant and material to the resolution of the dispute.

(3) Without limiting subarticle (2), the arbitral tribunal may make orders with respect to any of:

(a) security for costs;

(b) discovery of documents and interrogatories, including by or in respect of persons that are not parties to the dispute or the arbitration, and such persons are by this Statute compelled to comply with such orders;

(c) giving of evidence by affidavit;

(d) the inspection of any property which is or forms part of the subject-matter of the dispute;

(e) the taking of photographs of any property which is or forms part of the subject-matter of the dispute;

(f) samples to be taken from, or any observation to be made of or experiment conducted on, any property which is or forms part of the subject-matter of the dispute;

(g) dividing, recording and strictly enforcing the time allocated for a hearing between the parties (a stop clock arbitration);

(h) directing the Registrar of any Próspera ZEDE registry, including the Próspera ZEDE Entity Registry and Próspera ZEDE Property Registry, to effectuate or refuse to effectuate any registral decision or action necessary to maintain or restore the status quo pending determination of the dispute, with which the Registrar shall promptly comply;

(i) directing any of the Próspera ZEDE parties to take any self-help measure they are authorized under Próspera ZEDE law to take which would maintain or restore the status quo pending determination of the dispute, with which the duly empowered representative of the same shall promptly comply.

**18 Conditions for granting interim measures**

(1) The party requesting an interim measure under subarticle 17(2)(a) to (c) must satisfy the arbitral tribunal that:

(a) harm not adequately remedied by an award of damages is likely to result if the measure is not ordered, and that harm substantially outweighs the harm that is likely to result to the party against whom the measure is directed if the measure is granted; and

(b) there is a reasonable possibility that the requesting party will succeed on the merits of the claim. The determination on this possibility shall not affect the discretion of the arbitral tribunal in making any subsequent determination.

(2) With regard to a request for an interim measure under subarticle 17(2)(d), the requirements in subarticle (1) apply only to the extent the arbitral tribunal considers appropriate.

**Division 3 – Preliminary orders**

**19 Applications for preliminary orders and conditions for granting preliminary orders**

(1) Unless otherwise agreed by the parties, a party may, without notice to any other party, make a request for an interim measure together with an application for a preliminary order requiring a party not to frustrate the purpose of the interim measure requested.

(2) The arbitral tribunal may grant a preliminary order provided it considers that prior disclosure of the request for the interim measure to the party against whom it is directed risks frustrating the purpose of the measure.

(3) The conditions defined under article 17 apply to any preliminary order, provided that the harm to be assessed under subarticle 17(1)(a) is the harm likely to result from the order being granted or not.

**20 Specific regime for preliminary orders**

(1) Immediately after the arbitral tribunal has made a determination in respect of an application for a preliminary order, the arbitral tribunal shall give notice to all parties of the request for the interim measure, the application for the preliminary order, the preliminary order, if any, and all other communications, including by indicating the content of any oral communication, between any party and the arbitral tribunal in relation thereto.

(2) At the same time, the arbitral tribunal shall give an opportunity to any party against whom a preliminary order is directed to present its case at the earliest practicable time. The arbitral tribunal shall decide promptly on any objection to the preliminary order.

(3) A preliminary order shall expire after 20 days from the date on which it was issued by the arbitral tribunal unless a different expiration date is specified in the order. However, the arbitral tribunal may issue an interim measure adopting or modifying the preliminary order, after the party against whom the preliminary order is directed has been given notice and an opportunity to present its case.

(5) A preliminary order shall be binding on the parties. Such a preliminary order does not constitute an award; however, contumacious noncompliance with a preliminary order may justify entry of sanctions, including the possibility of an award, against the noncompliant party.

**Division 4 - Provisions applicable to interim measures and preliminary orders**

**21 Modification, suspension, termination**

The arbitral tribunal may modify, suspend or terminate an interim measure or a preliminary order it has granted, on application of any party or, in exceptional circumstances and on prior notice to the parties, on the arbitral tribunal's own initiative.

**22 Provision of security**

The arbitral tribunal may require the party requesting an interim measure or an interim measure and a preliminary order to provide appropriate security in connection with the measure.

**23 Disclosure**

(1) The arbitral tribunal may require any party promptly to disclose any material change in the circumstances on the basis of which an interim measure was requested or granted.

(2) The party applying for a preliminary order shall disclose to the arbitral tribunal all circumstances that are likely to be relevant to the arbitral tribunal's determination whether to grant or maintain the order, and such obligation shall continue until the party against whom the order has been requested has had an opportunity to present its case. Thereafter, subarticle (1) shall apply.

**24 Costs and damages**

(1) The party requesting an interim measure or an interim measure and preliminary order is liable for any costs and damages caused by the measure to any party if the arbitral tribunal later determines that, in the circumstances, the measure or order should not have been granted.

(2) The arbitral tribunal may award such costs and damages at any point during the proceedings.

**Division 5 – Recognition and enforcement of interim measures**

**25 Recognition and enforcement**

(1) An interim measure issued by an arbitral tribunal under this Statute is to be recognised as binding and, unless otherwise provided by the arbitral tribunal, enforced on application to the Próspera ZEDE court.

(2) The party who is seeking or has obtained recognition or enforcement of an interim measure must promptly inform the court of any termination, suspension or modification of that interim measure.

(3) The Próspera ZEDE court may, if it considers it proper, order the requesting party to provide appropriate security if the arbitral tribunal has not already made a determination with respect to security or where such a decision is necessary to protect the rights of third parties.

**26 Grounds for refusing recognition or enforcement**

(1) Recognition or enforcement of an interim measure may be refused only:

(a) at the request of the party against whom it is invoked if the arbitral appeals tribunal is satisfied that:

(i) such a refusal is warranted on the grounds set out in subarticle 61;

(ii) the arbitral tribunal's decision with respect to the provision of security in connection with the interim measure has not been complied with; or

(iii) the interim measure has been terminated or suspended by the arbitral tribunal; or

(b) if the arbitral appeals tribunal otherwise finds that any of the grounds set out in subarticle 61 apply to the recognition and enforcement of the interim measure.

(2) Any determination made by the arbitral appeals tribunal on any ground in subarticle (1) is effective only for the purposes of the application to recognise and enforce the interim measure.

(3) The arbitral appeals tribunal must not, in making a determination with respect to the recognition or enforcement sought, undertake a review of the substance of the interim measure.

**Division 6 - Próspera ZEDE court-ordered interim measures**

**27 Court-ordered interim measures**

If and to the extent jurisdiction exists under this Statute, the Próspera ZEDE court has the same power of issuing an interim measure in relation to arbitration proceedings as it has in relation to proceedings in courts.

**Part 4 – Conduct of arbitral proceedings**

**28 Equal treatment of parties**

The parties must be treated with equality under the law and each party must be given a reasonable opportunity of presenting the party's case.

**29 Determination of rules of procedure**

(1) Subject to the provisions of this Statute, the parties are free to agree on the procedure to be followed by the arbitral tribunal in conducting non-public proceedings. Failing such agreement, the arbitral tribunal may, in the case of a non-public proceeding, conduct the arbitration in such manner as it considers appropriate subject to the provisions of this Statute.

(2) In the case of an adjudicative arbitration proceeding before the arbitral tribunal of the default ASP, which may result in a published final award having precedential value, the arbitral tribunal shall adopt the rules of procedure that would be applicable to the dispute as if it were brought before the Próspera ZEDE court and, if none has been established, then the arbitral tribunal shall adopt the most relevant or analogous rules of procedure applicable to proceedings in the district courts of the federal judicial system of the United States, to the extent they are consistent with this Statute.

(3) In the case of an appeal to the arbitral appeals tribunal from an adjudicative arbitration proceeding that may result in a published final award having precedential value, the arbitral appeals tribunal shall adopt the rules of procedure that would be applicable to the dispute as if it were brought before the Próspera ZEDE court of appeals and, if none has been established, then the arbitral appellate tribunal shall adopt the most

# EXHIBIT C

Alexander Kolodin (AZ Bar #030826)
Neal Carter (AZ Bar #034200)
**Kolodin Law Group PLLC**
4105 N. 20th St. Ste 110
Phoenix, AZ 85016
Telephone: (602) 730-2985
Facsimile: (602) 801-2539
Alexander.Kolodin@KolodinLaw.com
Neal@KolodinLaw.com

*Attorneys for Plaintiff/Claimant Masi LLC*

**BEFORE THE PROSPERA ARBITRATION CENTER**

**(Trial Arbitral Tribunal – Precedential Proceedings – Minor Claims)**

| | |
|---|---|
| MASI LLC; | No. |
| *Plaintiff/Claimant*, | **COMPLAINT** |
| v. | **1. Notice of Arbitration** |
| SESHAT BANK, SEAN PAWLEY; | **2. Demand for Arbitration** |
| *Defendants/Respondents*. | **3. Request for Interim Measures** |

PARTIES, JURISDICTION, AND VENUE

1. Masi LLC ("Plaintiff" or "Depositor") is a Prosperan registered company. Its principal is Michael Marsalek, an e-resident of Prospera. Plaintiff may be contacted through our office at the information provided in the caption.
2. Seshat Bank is and was a Prosperan chartered bank and, upon information and belief, had a consent to arbitration on file at all times relevant hereto.[1]
3. Upon information and belief, Sean Pawley was an e-resident of Prospera at all times relevant hereto. He founded Seshat Bank and was its principal at all times relevant hereto.

[1] *Case Study: Seshat Bank*, HONDURAS PROSPERA INC., https://edgnrfnypo5.exactdn.com/wp-content/uploads/2023/08/Seshat-Bank-Case-Study-1.pdf pg. 2 (Mar. 2023) ("As the first full-service commercial bank in Próspera, Seshat Bank combines conventional bank offerings with digital, customer-focused applications that tailor the banking capability to each customer.").

4. The only contact information for Seshat Bank and Sean Pawley currently known to Plaintiff is as follows: sean@seshatbank.com, 1 (603) 264-6763.
5. This dispute is capable of arbitration under the Organic Law, Charter and Bylaws, or residency contract.
6. This dispute is based on a transaction or operative facts arising in substantial part within the boundaries of the Próspera ZEDE, or arises from the exercise of rights, privileges or immunities established or enforceable under the Organic Law, the Charter and Bylaws or a residency contract such that all parties to the dispute would have had sufficient contact with the Próspera ZEDE's jurisdiction and authority that they had or would have had reasonable notice of the dispute being governed by the Prospera Arbitration Statute ("PAS").
7. Plaintiff seeks arbitration of this dispute under the PAS.
8. The parties to the dispute did not previously expressly or by necessary implication reject application of this Statute in a contract between them.
9. Therefore, even in the absence of a filed consent to arbitration, the Prospera Arbitration Center ("PAC") has jurisdiction.
10. The amount in controversy is greater than $10,000 USD and less than $50,000 USD.
11. Therefore, venue is proper in this tribunal.

ALLEGATIONS GENERAL TO ALL CLAIMS

12. Claimant incorporates by reference all preceding allegations as if fully set forth herein.
13. Plaintiff has $40,943.35 on deposit with Seshat Bank:



14. On Aug. 18th, 2024, Plaintiff attempted to withdraw the funds. However, the bank did not allow the withdrawal.

FIRST CAUSE OF ACTION

(Breach of Contract)

15. Claimant incorporates by reference all preceding allegations as if fully set forth herein.

16. It is an express or implied term of the contract between a depositor and a bank that sums will be available for withdrawal.

17. Further, pursuant to Prospera Financial Regulation A § 202: "A bank must manage its assets and liabilities, as well as its off-balance sheets assets and liabilities to ensure it maintains the liquidity needed to meet its financial obligations as they fall due." This obligation on the part of Seshat Bank was part of the express or implied contract between the parties.

18. By failing to make Plaintiff's sums available for withdrawal, Defendants have breached this contract.

SECOND CAUSE OF ACTION

(Account Stated – Rstmt 2nd of Contracts § 282)

19. Claimant incorporates by reference all preceding allegations as if fully set forth herein.

20. The elements of account stated are (1) prior transactions, (2) acknowledgement of balance, (3) express or implied agreement, and (4) promise to pay.

21. Plaintiff, as a depositor in the bank, had a history of prior transactions with Defendants.

22. On January 8th, Mr. Marsalek wrote to Mr. Pawley requesting the return of his funds, plus 10% default interest, PAC fees, and attorney's fees for a total of $46,000.00. Mr. Pawley agreed to remit these sums but they were not remitted.

23. On January 9th, Mr. Pawley stated "coming your way."

**Subject:** Re: Account Closure and Transactions
**Date:** Thu, 9 Jan 2025 04:57:08 -0500
**From:** Sean Pawley <sean@seshatbank.com>
**To:** Michael Marsalek - Masi LLC <office@masi.llc>
**CC:** Keenan Kavanaugh <keenan@seshatbank.com>

Coming your way

On Wed, Jan 8, 2025, 6:11 AM Sean Pawley <sean@seshatbank.com> wrote:

> $46,000 in total. Agreed.
>
> On Wed, Jan 8, 2025, 6:06 AM Michael Marsalek - Masi LLC <office@masi.llc> wrote:
>
> > A short update on the current situation. We have been taking legal action since last Monday. You owe me:
> >
> > - 40,923.35 USD
> > - an additional 10% p.a. default interest since August 18
> > - fees for PAC (Prospera Arbitration Center) and subsequent court costs in the USA
> > - my attorney costs

24. However, despite acknowledging the amount owed, Defendants have still not remitted said funds.

THIRD CAUSE OF ACTION

(Fraud – Rstmt. 2nd of Torts § 525, *et cet.*)

25. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

26. The elements of fraud are (1) a representation, (2) knowledge of falsity, (3) intent to defraud, (4) reliance, and (5) damages.

27. Defendants represented that Seshat Bank would keep sufficient funds would be available for depositor withdrawals. For example, Defendant Pawley represented that "Seshat's approach involves conservative management of short-term liabilities[.]"[2] By way of further example, Seshat Bank holds itself out to the

[2] *Case Study: Seshat Bank*, HONDURAS PROSPERA INC., https://edgnrfnypo5.exactdn.com/wp-content/uploads/2023/08/Seshat-Bank-Case-Study-1.pdf pg. 6 (Mar. 2023), *see also id*. at pg. 2 ("The quoted data and opinions expressed in this case study were provided by the subject, in interviews conducted by Erdös Associates, an independent third-party firm. Unless otherwise indicated, all direct quotes are attributable to Seshat Bank Founder Sean Pawley. The study was funded and published by Honduras Próspera, Inc.").

public as a "Full Reserve Bank[,]" which is a bank that does not lend out demand deposits.[3]

28. Upon information and belief, at the time these representations were made, Defendants knew that they were false.

29. Further, "Depositors must be fully informed of the lack of a 100% reserve requirement and all material risks of depositing funds in the bank, which may be confirmed by signed written affirmative certification of the depositor." Plaintiff was not so informed." Prospera Financial Regulation A §§ 323, 333.

30. Defendants intended thereby to induce depositors to place funds on deposit with Seshat Bank in reliance that the funds necessary to satisfy their deposits would be kept in reserve.

31. Plaintiff relied on these representations.

32. Plaintiff's reliance resulted on it placing the funds on deposit with Seshat Bank that, despite demand, have not been returned.

REQUEST FOR INTERIM MEASURES

(PAS Division 2)

33. Plaintiff incorporates by reference all preceding allegations as if fully set forth herein.

34. "Unless otherwise agreed by the parties, the arbitral tribunal may, at the request of a party, grant interim measures." PAS Division 2 17(1).

35. Pursuant to PAS Division 2 17(2):"An interim measure is any temporary measure, whether in the form of an award or in another form, by which, at any time prior to the issuance of the award by which the dispute is finally decided, the arbitral tribunal orders a party or any of the Próspera ZEDE parties to:

a. maintain or restore the status quo pending determination of the dispute;

b. take action that would prevent, or refrain from taking action that is likely to cause, current or imminent harm or prejudice to the arbitral process itself

[3] *Company*, SESHAT BANK, https://seshatbank.com/company (last visited Jan. 14, 2025).

c. provide a means of preserving assets out of which a subsequent award may be satisfied; or

d. preserve evidence that may be relevant and material to the resolution of the dispute.".

36. Seshat Bank states that it is "currently winding down our Prospera ZEDE operations and voluntarily liquidating our operations there to focus on our overseas acquisitions."[4]

37. The status quo pending termination of the dispute is that Seshat Bank has assets under the direct jurisdiction of the PAC that would suffice to satisfy this claim.

38. Alternatively, allowing Seshat Bank to move assets out of Prospera while this dispute is pending would cause imminent harm or prejudice to the arbitral process itself.

39. Alternatively, providing an interim measure would provide a means of preserving assets out of which a subsequent award may be satisfied.

40. "Without limiting subarticle (2), the arbitral tribunal may make orders with respect to any of: (a) security for costs; … (h) directing the Registrar of any Próspera ZEDE registry, including the Próspera ZEDE Entity Registry and Próspera ZEDE Property Registry, to effectuate or refuse to effectuate any registral decision or action necessary to maintain or restore the status quo pending determination of the dispute, with which the Registrar shall promptly comply; (i) directing any of the Próspera ZEDE parties to take any self-help measure they are authorized under Próspera ZEDE law to take which would maintain or restore the status quo pending determination of the dispute, with which the duly empowered representative of the same shall promptly comply."

41. Therefore, Plaintiff requests an interim measure

a. Directing all Registrars of Prospera ZEDE property to (i) cease engaging in any to facilitate Seshat Bank's liquidation until this dispute is resolved (ii)

---

[4] *Company*, SESHAT BANK, https://seshatbank.com/company (last visited Jan. 14, 2025).

refuse to perform any act which would allow Defendants to sell property in Prospera or facilitate the transfer of funds out of Prospera.

b. Alternatively, Plaintiff requests that the PAC order that $46,000.00, plus its anticipated costs, be placed on deposit with it.

PROPOSAL AS TO THE LANGUAGE OF THE ARBITRATION

42. Plaintiff proposes that the arbitration be conducted in the English language.

WHEREFORE Plaintiff demands relief as follows:

A. For an award of damages against Defendants in the amount of $46,000.00 plus PAC fees, attorney's fees, and costs of suit with default interest at the rate of 10% per year until paid. *See e.g.*, PAS § 55(1).

B. For treble damages on the amount deposited by Plaintiff at Defendants' fraudulent inducement if this matter proceeds to disposition.

C. For an interim measure:

a. Directing all Registrars of Prospera ZEDE property to (i) cease engaging in any to facilitate Seshat Bank's liquidation until this dispute is resolved (ii) refuse to perform any act which would allow Defendants to sell property in Prospera or facilitate the transfer of funds out of Prospera.

b. Directing Defendants to place $46,000.00, plus the PAC's anticipated costs, on deposit with the PAC.

D. That any award be issued in a form such that it may be domesticated in any court of competent jurisdiction.

E. For such other relief as this tribunal may deem just and proper.

RESPECTFULLY SUBMITTED this 20th day of January, 2025.

By: */s/Alexander Kolodin*
Alexander Kolodin
Neal Carter
**KOLODIN LAW GROUP PLLC**
4105 N. 20th St. Ste 110
Phoenix, AZ 85016

*Attorneys for Plaintiff Masi LLC*